QUESTIONS: 1. What effect, if any, does the enactment of the Consultants' Competitive Negotiation Act, s. 287.055, F.S., have on the views expressed in AGO 073-42? 2. May the American Institute of Architects competition method be used for selection of a Capitol Center Planner, or is this method of selection and setting compensation prohibited by s. 287.055, F.S.? 3. May participants in such a competition be exempted from the applicable Florida professional registration laws and regulations?
SUMMARY: Professional services required by state agencies for the preparation of a comprehensive plan for the development of the Capitol Center must be procured in accordance with the procedures established in s. 287.055, F.S. Services outside the scope of "professional services," as defined in s. 287.055, which may be required for the development of this plan may not be procured or paid for with appropriations for fiscal year 1974-1975 by means of an American Institute of Architects Code competition. The 1974 General Appropriations Act restricts the appropriation for the preparation of the plan for the Capitol Center to that purpose alone. In AGO 073-42, I expressed the view that s. 272.121, F.S., authorized the state, through its Division of Building Construction and Maintenance and its Capitol Center Planning Commission, to procure professional planning services for the Capitol Center Planning District. The opinion also concluded that, with some restrictions, the laws of Florida did not prohibit contracting for such services by means of an American Institute of Architects Code "Class B" competition. Subsequent to the rendition of that opinion, however, the legislature enacted s. 287.055, F. S., the Consultants' Competitive Negotiation Act. This act requires that each state agency comply with the selection and negotiation procedures established therein when acquiring professional services. Section 287.055(2)(a) defines "professional services" as: . . . those services within the scope of the practice of architecture, professional engineering, or registered land surveying, as defined by the laws of the state, or those performed by any architect, professional engineer, or registered land surveyor in connection with his professional employment or practice. When acquiring professional services within this definition, therefore, these agencies must now comply with s.287.055, and any procedures inconsistent with that statute are no longer authorized. Aside from your specific question regarding s.287.055, supra, there is also another reason why AGO 073-42 no longer governs these questions. In its 1974 appropriations act for fiscal year 1974-1975, the legislature appropriated one hundred thousand dollars for the Capitol Center Development Plan but with the proviso that the funds "may be used only for the preparation of a comprehensive plan for development of the capitol center and shall not be used in support of competition." It is clear from the records of committee hearings that this proviso was intended to prohibit the selection of a Capitol Center Planner through a "competition" such as a prize-awarding contest like the A.I.A. Code competitions. The legislature has qualified or restricted this particular appropriation so that it may be used only for the preparation of a comprehensive plan for development of the Capitol Center by the agency to which the money was appropriated, and for no other purpose. Should any services required for the preparation of the comprehensive plan for the Capitol Center be outside the scope of the above-quoted definition of "professional services," the agencies contracting for such services would not have to comply with s. 287.055, F.S. In view of the qualification or restriction appended to subject appropriation item in the 1974 General Appropriations Act, however, even these services may not be procured by means of an A.I.A. competition. Your first two questions having been answered in this manner, the third question posed has become moot.